# In the United States Court of Federal Claims
## OFFICE OF SPECIAL MASTERS
### No. 19-1051V
### UNPUBLISHED

| | |
|---|---|
| BARBARA TURNER, as Personal Representative of the ESTATE OF HARRY TURNER, <br><br>                 Petitioner, <br> v. <br><br> SECRETARY OF HEALTH AND HUMAN SERVICES, <br><br>                 Respondent. | Chief Special Master Corcoran <br><br> Filed: July 27, 2021 <br><br> Special Processing Unit (SPU); Decision Awarding Damages; Pain and Suffering; Influenza (Flu) Vaccine; Guillain-Barré syndrome (GBS) |

*Leah VaSahnja Durant, Law Offices of Leah V. Durant, PLLC, Washington, DC, for Petitioner.*

*Mark Kim Hellie, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION AWARDING DAMAGES[1]

On July 22, 2019, Barbara Turner, as Personal Representative of the Estate of Harry Turner, filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleged that Mr. Turner suffered Guillain Barré syndrome ("GBS") as a result of an influenza ("flu") vaccination administered to him on October 11, 2017. Petition at 1. The case was assigned to the Special Processing Unit of the Office of Special Masters.

---

[1] Because this unpublished decision contains a reasoned explanation for the action in this case, I am required to post it on the United States Court of Federal Claims' website in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2012) (Federal Management and Promotion of Electronic Government Services). **This means the decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2012).

Although entitlement was conceded, the parties could not agree on damages, so the disputed component of actual pain and suffering was submitted to SPU Motions Day.

For the reasons set forth below, and after holding a brief hearing on damages in this matter, I find that Petitioner is entitled compensation, and I award damages in the total amount of $150,000.00, representing compensation for Mr. Turner's actual pain and suffering.

## I.        Relevant Procedural History

A little over a year after the case's initiation, on August 24, 2020, Respondent filed a Rule 4(c) Report in which he conceded that Petitioner was entitled to compensation in this case. ECF No. 17. Accordingly, on August 26, 2020, a Ruling on Entitlement issued. ECF No. 19. After attempting to informally resolve the issue of damages, the parties informed me on December 30, 2020, that they had reached an impasse in their discussions. ECF No. 25. I therefore provided the parties an opportunity to file written briefs in support of their damages positions, and scheduled this matter for an expedited hearing and ruling. ECF Nos. 26, 35.

The hearing was held on June 25, 2021, and the only disputed damages component was pain and suffering.[3] Minute Entry dated June 28, 2021; Transcript of Proceedings, ECF No. 39. Petitioner requests that I award $200,000.00 for Mr. Turner's past pain and suffering. ECF Nos. 30, 33. Respondent proposes that I award the lesser amount of $92,500.00. ECF No. 31.

## II.       Legal Standard

Compensation awarded pursuant to the Vaccine Act shall include "[f]or actual and projected pain and suffering and emotional distress from the vaccine-related injury, an award not to exceed $250,000." Section 15(a)(4). Additionally, a petitioner may recover "actual unreimbursable expenses incurred before the date of judgment awarding such expenses which-- (i) resulted from the vaccine-related injury for which petitioner seeks compensation, (ii) were incurred by or on behalf of the person who suffered such injury, and (iii) were for diagnosis, medical or other remedial care, rehabilitation . . . determined to be reasonably necessary." Section 15(a)(1)(B). The petitioner bears the burden of proof with respect to each element of compensation requested. *Brewer v. Sec'y of Health & Human Servs.*, No. 93-0092V, 1996 WL 147722, at *22-23 (Fed. Cl. Spec. Mstr. Mar. 18, 1996).

---

[3] Leah Durant appeared on behalf of Petitioner, and Mark Hellie appeared on behalf of Respondent.

There is no mathematic formula for assigning a monetary value to a person's pain and suffering and emotional distress. *I.D. v. Sec'y of Health & Human Servs.*, No. 04-1593V, 2013 WL 2448125, at *9 (Fed. Cl. Spec. Mstr. May 14, 2013) ("[a]wards for emotional distress are inherently subjective and cannot be determined by using a mathematical formula"); *Stansfield v. Sec'y of Health & Human Servs.*, No. 93-0172V, 1996 WL 300594, at *3 (Fed. Cl. Spec. Mstr. May 22, 1996) ("the assessment of pain and suffering is inherently a subjective evaluation"). Factors to be considered when determining an award for pain and suffering include: 1) awareness of the injury; 2) severity of the injury; and 3) duration of the suffering. *I.D.*, 2013 WL 2448125, at *9 (quoting *McAllister v. Sec'y of Health & Human Servs.,* No 91-1037V, 1993 WL 777030, at *3 (Fed. Cl. Spec. Mstr. Mar. 26, 1993), *vacated and remanded on other grounds*, 70 F.3d 1240 (Fed. Cir. 1995)).

Prior pain and suffering awards in comparable cases also bear on the findings reached herein. *See, e.g.*, *Doe 34 v. Sec'y of Health & Human Servs.*, 87 Fed. Cl. 758, 768 (2009) (finding that "there is nothing improper in the chief special master's decision to refer to damages for pain and suffering awarded in other cases as an aid in determining the proper amount of damages in this case."). And, of course, I may rely on my own experience (along with my predecessor Chief Special Masters) adjudicating similar claims.[4] *Hodges v. Sec'y of Health & Human Servs.*, 9 F.3d 958, 961 (Fed. Cir. 1993) (noting that Congress contemplated the special masters would use their accumulated expertise in the field of vaccine injuries to judge the merits of individual claims).

### III.    Appropriate Compensation in this Case

In this case, awareness of the injury is not disputed. The record reflects that at all times Mr. Turner was a competent adult, with no impairments that would impact his awareness of his injury. I thus analyze principally the severity and duration of Mr. Turner's injury.

In performing this analysis, I have reviewed the record as a whole to include the medical records and affidavits filed and all assertions and argument made by the parties in written documents and at the expedited hearing held on June 25, 2021. I also considered prior awards for pain and suffering in both SPU and non-SPU GBS cases, and rely upon my experience in adjudicating those cases.[5] However, I ultimately base my

---

[4] From July 2014 until September 2015, the SPU was overseen by former Chief Special Master Vowell. For the next four years, until September 30, 2019, all SPU cases, including the majority of SIRVA claims, were assigned to former Chief Special Master Dorsey, now Special Master Dorsey. In early October 2019, the majority of SPU cases were reassigned to me as the current Chief Special Master.

[5] Statistical data for all GBS cases resolved in SPU by proffered amounts from inception through January 1, 2021 reveals the median amount awarded to be approximately $167,499.14. These awards have typically

determination on the circumstances of this case.

Here, the record shows that Mr. Turner, a retiree with very significant comorbidities, presented on October 23, 2017 (approximately 12 days after this flu vaccination), to the emergency department with a five-day history of weakness. Ex. 11 at 3. He was assessed with acute generalized weakness after extensive testing, and discharged with a plan to follow-up with his primary care physician. Ex. 11 at 9. However, Mr. Turner presented to a different emergency department the following day due to ongoing weakness and was admitted. During his hospitalization, Mr. Turner underwent an MRI, a lumbar puncture, therapy sessions, and a five-day course of IVIG before his discharge, after seven days, on October 31, 2017. *Id.* at 536. At the time of his discharge, Mr. Turner was found to be clinically improved due to his IVIG and he exhibited upper extremity strength at 4/5 and lower extremity strength at 5/5. *Id.* at 536-537. His diagnoses at discharge included GBS and "prior medical history."[6] Ex. 3 at 535. Mr. Turner was recommended to receive in-patient rehabilitative care "for optimization of his activities of daily living" after evaluation by occupation and physical therapy. *Id.* at 536.

During his in-patient rehabilitation, Mr. Turner required a PEG tube, as he remained weak and was unable to swallow (although the necessity for a PEG tube predated GBS onset). Ex. 2 at 19, 30. Mr. Turner underwent physiatry treatment, as well as occupational and physical therapy, and "overall his functional status [] significantly improved" during his stay in rehabilitation. Ex. 2 at 21. At the time of his discharge from in-patient care on October 11, 2018, Mr. Turner was reported to be social, humorous and able to complete all activities of daily life (including: grooming, bathing, dressing, using the toilet, home management, and able to pick up items from the floor) with no assistance. *Id.* at 23.

Thereafter, Mr. Turner engaged in outpatient therapy completing 20 physical therapy sessions over three months (Ex. 3 at 493), 15 occupational therapy sessions over approximately three months (*id.* at 171), and 24 speech therapy sessions (*id.* at 325) over approximately six months. Of note, Mr. Turner reported no pain throughout his physical therapy sessions. *See, e.g.*, Ex. 3 at 436-497. Additionally, Mr. Turner treated with a neurologist out-patient for his GBS, and by March 27, 2018, his neurologist found that while Mr. Turner continued to improve his motor strength, he had "persistent sensory complaints." Ex. 4 at 3. Unfortunately, at that time it was also observed that Mr. Turner

---

ranged from approximately $128,072.42 to $269,933.00, representing cases between the first and third quartiles.

[6] Mr. Turner's past medical history was recorded as follows: Tongue cancer (status post chemoradiation treatment at Dana-Farber Center); Depression; HTN; s/p PEG; right knee repair; facial reconstruction; deviated spectrum surgery. Ex. 3 at 535.

had a recurrence of a tumor in his lymph nodes and was being followed by oncology.[7] *Id.*

On April 26, 2018, Mr. Turner began a new round of physical therapy. He reported he had difficulty with his right shoulder strength and range of motion, specifically describing limited cervical range of motion, poor posture control, and limited strength. Ex. 3 at 30. Again, Mr. Turner's physical therapy records evidence a report of no pain – his best and worst pain was documented as "0." Ex. 3 at 30. However, on May 18, 2018, Mr. Turner was discharged from physical therapy after only completing four sessions, and transferred to hospice care as a result of his cancer. Ex. 3 at 49-50. Mr. Turner died on August 5, 2018 from causes unrelated to his GBS – squamous cell carcinoma of oropharynx. Ex. 6.

While Mr. Turner had not yet completely recovered from his GBS at the time of his death, I find that his GBS and related sequela had significantly improved. In making my determination, I have fully considered Petitioner's supplemental affidavit, which describes the pain experienced by her husband, Mr. Turner, over the course of his injury, as well as, the limitations in his exercise of daily functions, physical activities, hobbies, and interactions with his grandchildren attributed to his GBS. Petitioner also describes the toll Mr. Turner's injury placed on his emotional well-being. Ex. 13.

As I informed the parties during the expedited hearing, the question in this case is not whether Petitioner is entitled to *any* compensation for Mr. Turner's pain and suffering, but rather *what* amount of compensation is justified, based upon the facts of the case. This determination is not an exact science but more of an art. While it is tempting to "split the difference" and award an amount halfway between the amounts proposed by the parties (based upon the determination that the parties' respective positions reasonably "frame" high and low potential awards), each petitioner deserves an examination of the specific facts in his or her case. Thus, while amounts ultimately awarded may end up falling somewhere in the range between the awards proposed by both parties, this result flows from a specific analysis of Mr. Turner's personal circumstances.

Based upon the record as a whole, I find that the severity and duration of Mr. Turner's GBS symptoms warrant a significant pain and suffering award, but not quite at the level requested by Petitioner.

In her brief, Petitioner cites to two cases that were conceded and resolved via proffer and agreement, resulting in pain and suffering awards of $200,000.00 and $225,000, arguing that these instances are comparable to the present circumstances.

---

[7] In fact, Mr. Turner had undergone a right modified neck dissection, several weeks prior on March 2, 2018, at the Dana Farber Cancer Institute. Ex. 3 at 8.

ECF No. 32 at 13-14. Petitioner also cites three prior GBS reasoned damages decisions, maintaining that Mr. Turner's injury was more devastating than that suffered by petitioners in those cases, therefore justifying a higher award. *Id.* at 15-16. (citing *Johnson v. Sec'y of Health & Human Servs.*, No. 16-1356V, 2018 WL 5024012 (Fed. Cl. Spec. Mstr. July, 20, 2018) (awarding $180,000.00 for actual pain and suffering); *Dillenbeck v. Sec'y of Health & Human Servs.*, No. 17-428V, 2019 WL 4072069 (Fed. Cl. Spec. Mstr. July 29, 2019) *aff'd in relevant part and remanded on other grounds* 147 Fed. Cl. 131 (2020) (awarding $170,000.00 for past pain and suffering); *Presley v. Sec'y of Health & Human Servs.*, No. 17-1888V, 2020 WL 1898856 (Fed. Cl. Spec. Mstr. March 23, 2020) (awarding $180,000.00 for past pain and suffering)).

Respondent in reaction cites to two cases that were conceded and resolved via Proffer, but resulting in lower awards of $92,000.00 and $105,000, thus justifying his preferred award of $92,500.00. ECF No. at 7-8. Respondent further asserts his proposed award is supported by "a number of flu/GBS cases" that were resolve informally, but that the privacy provision of the Vaccine Act prevents a true comparison (since details from those matters cannot be disclosed herein). *Id.*

I reject the implied argument of both parties that the amounts awarded in proffered cases provide more persuasive guidelines for the award to be issued in this matter than reasoned decisions from the Court and special masters. As I have previously stated, a proffer is simply *Respondent's* assessment (as agreed to by Petitioner) of the appropriate amount to be awarded. A special master's approval of a proffer is not akin to a reasoned evaluation of damages, issued by a neutral judicial officer, that can be looked to when evaluating the damages to be awarded – even if settled cases and proffers do provide *some* evidence of the magnitude of awards in factually-similar actions.

Moving to the relevant facts, Petitioner argues that Mr. Turner's concurrent suffering from GBS while fighting cancer supports a higher award, as his final months were made worse and his suffering greater as a result of his GBS, and notes "a general principle of tort law is that the defendant must take his plaintiff as he finds him." ECF No. 30 at 13-14. However, Respondent argues that Mr. Turner's clinical course of GBS as a whole "demonstrates a less severe course of GBS than others." ECF No. 31 at 6.

As I have previously explained, I generally agree with Petitioner that the mere fact a claimant had pre-vaccination (or post-vaccination) comorbidities does not per se diminish the impact of injury on his life – especially one as alarming and potentially life-altering as GBS – and therefore is not alone a reason for a lower award. *Bircheat v. Sec'y of Health & Human Servs.*, No. 19-1088V, 2021 WL 3026880, at *4 (Fed. Cl. Spec. Mstr. June, 16, 2021) (awarding $170,000.00 for actual pain and suffering). However, those comorbidities, here a devastating cancer, are still relevant to pain and suffering, since

their ongoing nature, concurrent with the vaccine injury, means that not all of his post-vaccination suffering can in fact be attributed to that injury. Nonetheless, I have taken into consideration the exceptional hardship imposed on Mr. Turner – who spent the final months of his life recovering from GBS, a very debilitating injury, while battling cancer at the same time.

In addition, while Mr. Turner's clinical course was initially relatively acute (requiring in-patient hospitalization/rehabilitation), I find that his subsequent course was less severe. Mr. Turner's GBS sequela had significantly improved after ten months of treatment, albeit after undergoing extensive therapies, and the continuance of some remaining sensory issues. Mr. Turner also consistently reported *no* pain throughout his physical therapy, despite experiencing other sequela from his GBS. In sum, the severity and duration of his injury was less than that suffered by the petitioners in *Dillenbeck*, *Presley*, and *Johnson*. And unlike some petitioners, whose GBS ends their working careers,[8] Mr. Turner was retired.

I find a different case to constitute a better comparable than the cases cited by Petitioner. *See generally Setaro v. Sec'y of Health & Human Servs*., No. 19-207V, 2021 WL 1440207 (Fed. Cl. Spec. Mstr. Mar. 16, 2021) (awarding $160,000.00 for actual pain and suffering). However, the duration of time that the *Setaro* petitioner suffered from GBS exceeded four years as of the date of the award, a significantly longer duration than the ten months Mr. Turner suffered from GBS prior to his untimely death.

As I explained previously to the parties during the expedited hearing, it is my view that GBS pain and suffering awards generally should be higher than those awarded to petitioners who have suffered a less frightening and physically-alarming injury such as SIRVA, given the more alarming nature of the former. After reviewing the record and specific facts in this case and considering the parties' arguments during the hearing, I find that $150,000.00 in compensation for past pain and suffering is reasonable based on the facts and circumstances specific to this case. This sum exceeds the amount that Respondent proposed, but is properly less than what Petitioner requested.

## IV.    Conclusion

For all of the reasons discussed above, and based on consideration of the record as a whole, I find that $150,000.00 represents a fair and appropriate amount of compensation for Mr. Turner's past pain and suffering.

---

[8] *See, e.g.*, *Dillenbeck*, 2019 WL 4072069, at *14.

**Accordingly, I award Petitioner a lump sum payment of $150,000.00 (representing actual pain and suffering) in the form of a check payable to Petitioner.**

This amount represents compensation for all damages that would be available under Section 15(a).

**IT IS SO ORDERED.**

<u>**s/Brian H. Corcoran**</u>
Brian H. Corcoran
Chief Special Master